THE BLACK MOUNTAIN CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5694.   Promulgated November 28, 1945.

*Jay C. Halls, Esq.*, for the petitioner.
*Harold H. Hart, Esq.*, for the respondent.

1118

OPINION.

Murdock, *Judge*: Section 23 (m) of the Revenue Act of 1936 grants, in the case of mines, a deduction of a reasonable allowance for depletion according to the peculiar conditions in each case. That allowance is to be made under rules and regulations prescribed by the Commissioner with the approval of the Secretary. Section 114 (b) (4) allows so called percentage depletion for coal and other mines. It provides that the allowance for depletion under section 23 (m), in the case of coal mines, shall be 5 percent of the gross income from the property during the taxable year, but such allowance shall not exceed 50 percent of the net income of the taxpayer from the property, computed without allowance for depletion. The Revenue Act of 1938 and the Internal Revenue Code contain similar provisions.

The stipulation shows that the operations of Mine No. 30 resulted in a loss in every one of the taxable years. Since the allowance can not exceed 30 percent of the net income from the property, and since there was no net income, the petitioner recognized that it was not entitled to any deduction in connection with its operation of that mine. Mine No. 31 operated at a profit in every taxable year except 1941. The profit on Mine No. 31 for the first three years exceeded the loss on Mine No. 30. The Commissioner, in determining the deficiencies, simply combined the operations of both mines, subtracted the loss of Mine No. 30 from the gain of Mine No. 31, and limited the petitioner's deduction accordingly. As a matter of fact, the petitioner gets a larger deduction for 1938 under the Commissioner's system than it claimed under its own, but this is more than offset in the next two years under the Commissioner's system.

Although the Commissioner, in determining the deficiencies, held that Mines Nos. 30 and 31 were a single property for the purpose of computing the deduction for percentage depletion, he makes a different contention in his brief. His contention now is that each separate acquisition of coal lands by the petitioner gave it a separate property for the purpose of computing the deduction for percentage depletion. He contends that practically all of the coal mined from the two mines during the taxable years was from coal acquired in one block in 1909 and only a small percentage, representing the remainder of the coal mined from the two mines during the taxable years, was from various small blocks of coal acquired after 1917. The evidence does not bear out the respondent's contention that the larger part of the coal mined during the taxable years was from coal acquired in 1909. The mine openings were both located on lands acquired in 1917. Some of the

lands acquired in 1909, some of the lands acquired in 1917, and some of the lands acquired after 1917 were assigned to each mine. Also some of the lands acquired in 1911 were assigned to Mine No. 31. The petitioner may have mined coal from all of these tracts during the taxable years, for all that this record shows.

The Commissioner finds support for his contention in one of his own counsel's opinions, G. C. M. 22106, C. B. 1941–1, page 245. He argues, following that opinion, that the word "property" is used at several different places in the statute and code and must have the same meaning at each place. For example, each separate acquisition is a separate property for the purpose of computing gain or loss, each has a separate basis under section 113, and a separate period of holding applies to each in computing capital gain or loss. Therefore, he argues, each separate acquisition is a separate property for the purpose of computing percentage depletion as provided in section 114 (b) (4). He says the administrative difficulties would be overwhelming if this were not so. This argument is not without force, but it is apparent that the difficulties are as great or greater under this contention as they would be under the petitioner's contention.

The percentage depletion deduction is the lesser of 5 percent of the gross income from the property and 50 percent of the net income from the property. Thousands of acres of coal were mined from each of these mines. Many tracts of that coal were obtained in blocks of less than an acre. The difficulty of determining the net income and the gross income for any year if each acquisition is to be treated as a property is at once apparent and would seem to be at least as great as the difficulties to which the respondent points.

The petitioner contends that "the property" as used in section 114 (b) (4) means the economic and practical unit which the taxpayer must use and develop in order to extract a particular block of coal. It includes whatever portion of the mineral deposit can be properly mined as a unit and it includes also the development, plant, and surface land necessary for the extraction of that particular block of coal. Under this theory a large block of coal acquired at one time might constitute more than one property, or smaller blocks of coal acquired at different times might combine to form a single property.

The regulations and decided cases support the petitioner's contention. The Commissioner, in Regulations 94, article 23 (m)–1, has given the following definitions:

(b) A "mineral property" is the mineral deposit, the development and plant necessary for its extraction, and so much of the surface of the land only as is necessary for purposes of mineral extraction.

* * * * * * *

(j) "The property," as used in section 114 (b) (2), (3) and (4) and articles 23 (m)–1 to 23 (m)–19, inclusive, means the interest owned by the taxpayer,

freehold or leasehold, in any mineral property. The taxpayer's interest in each separate mineral property is a separate "property"; but, where two or more mineral properties are included in a single tract or parcel of land, the taxpayer interest in such mineral properties may be considered to be a single "property," provided such treatment is consistently followed.

The corresponding articles of Regulations 101, 103, and 111 contain substantially the same definitions.

The case of *Helvering* v. *Jewel Mining Co.*, 126 Fed. (2d) 1011, reversing 43 B. T. A. 1123, is perhaps the authority closest to the present controversy. The taxpayer in that case leased in one transaction certain coal lands. It operated a mine on a portion of the acreage and subleased another part to another company, from which it received royalties. It claimed percentage depletion on the basis of its combined net income from its own operations and the royalties received from the sublessee. The Commissioner computed percentage depletion separately for the two operations. The Board of Tax Appeals sustained the petitioner, but the Circuit Court of Appeals for the Eighth Circuit reversed and held for the Commissioner that percentage depletion should be computed on the two properties separately. The Court was of the opinion that a practical test should be applied in determining what was meant by the property for the purpose of percentage depletion in the case of coal mines. It held that the term, under the statute and regulations, referred to a mineral deposit and whatever development, plant, and surface was necessary for the purpose of extracting that coal.

There are several cases dealing with oil properties which may present a somewhat different problem, but in the case of *Allie M. Turbeville*, 31 B. T. A. 283; affirmed on this point, 84 Fed. (2d) 307, it was held, citing *Vinton Petroleum Co. of Texas*, 28 B. T. A. 549, that the owner of a large ranch who had leased numerous portions of his property, reserving one-eighth of the oil as a royalty, should not be regarded as owning one single property, but should be regarded as owning each separate lease as a separate property. The case of *J. T. Sneed, Jr.* 40 B. T. A. 1136; affd., 119 Fed. (2d) 767, is to the same effect. See also *William H. Cree*, 47 B. T. A. 868. The Board, in the latter case, referring to the opinion of the Circuit Court of Appeals in the *Jewel Mining Co.* case, said:

\* \* \* the court held that there were two properties where a lessee of coal land subleased a part of the land, this only emphasizes the idea that there was a separation of acreage, and that such is the sound test of what constitutes a property.

We are unable to see the necessity for the Commissioner's contention that every separate acquisition of coal lands must be treated as a separate property for the purpose of computing percentage depletion. Separate acquisitions can, under proper circumstances, be combined to

form one property and, likewise, under proper circumstances, one acquisition may become a part of two different properties for this purpose. We hold for the petitioner on this point. The parties have stated that they are in agreement as to all figures necessary for computing percentage depletion, provided the Court will indicate which system or method should be followed.

The petitioner, in computing unit depletion on some properties other than the ones discussed above, failed to reduce its basis by deductions taken for prior years. It contends that those deductions were excessive, were taken erroneously, and did not benefit it because they did not offset any income. The facts on this point have been stipulated. The Commissioner relies upon the decision of the Supreme Court in the case of *Virginian Hotel Corporation of Lynchburg* v. *Helvering*, 319 U. S. 523. He also cites *Hoboken Land & Improvement Co.* v. *Commissioner*, 138 Fed. (2d) 104. The petitioner argues that those cases are not in point because they involved depreciation, whereas depletion is involved in this proceeding. The statements which the Supreme Court made in the *Virginian Hotel* case in regard to depreciation apply with equal force in the present case, even though depletion is involved here. We are unable to distinguish the present case in principle from that case, and on authority thereof we hold for the respondent on this issue.

*Decision will be entered under Rule 50.*